No. 24-10208

# UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

ABEL GARZA,

*Plaintiff-Appellant*

v.

ENERGY TRANSFER PARTNERS, L.L.C. and LA
GRANGE ACQUISITION, L.P.,

*Defendants-Appellees*

On Appeal from the
United States District Court
for the Northern District of Texas
Honorable Sidney A. Fitzwater, Presiding

District Court Case No. NO. 3:23-CV-00027-D

## BRIEF OF APPELLEES ENERGY TRANSFER PARTNERS, L.L.C. and LA GRANGE ACQUISITION, L.P.

Kelley Edwards
Matthew A. Swanger
LITTLER MENDELSON, P.C.
1301 McKinney Street, Suite 1900
Houston, Texas 77010
713.951.9400

**ATTORNEYS FOR DEFENDANTS-
APPELLEES**

## <u>CERTIFICATE OF INTERESTED PERSONS</u>

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Fifth Circuit Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

**A. Parties**

| | | |
|---|---|---|
| 1. | Plaintiff-Appellant | Abel Garza |
| 2. | Defendants-Appellees | Energy Transfer Partners, L.L.C.<br>La Grange Acquisitions, L.P. |

**B. Attorneys**

| | | |
|---|---|---|
| 3. | For the Plaintiff-Appellant | Charles H. Peckham<br>Mary Abbott Martin<br>Peckham Martin, PLLC<br>800 Bering Drive, Suite 220<br>Houston, TX 77057 |
| 4. | For the Defendants-Appellees | Kelley Edwards<br>LITTLER MENDELSON, P.C.<br>1301 McKinney Street, Suite 1900<br>Houston, Texas 77010<br><br>Matthew A. Swanger<br>LITTLER MENDELSON, P.C.<br>2001 Ross Avenue, Suite 1500<br>Dallas, Texas 75201 |

*/s/ Kelley Edwards*
Kelley Edwards
Counsel for Defendants-Appellees

## STATEMENT REGARDING ORAL ARGUMENT

Defendants-Appellees Energy Transfer Partners, L.L.C. ("Energy Transfer") and La Grange Acquisition, L.P. ("La Grange") (collectively referred to as "Appellees") respectfully submit that the issues raised in this appeal do not warrant oral argument. The legal and factual arguments presented in this appeal are clear and straightforward and based upon a concise summary judgment record, and therefore, Appellees do not believe that oral argument will materially assist the Court in its disposition of this appeal. Should the Court desire oral argument, however, Appellees welcome the opportunity to present to this Court their position on why this appeal is without merit and why the District Court's Order and Judgment should be affirmed.

# TABLE OF CONTENTS

PAGE

CERTIFICATE OF INTERESTED PERSONS ..........................................................i

STATEMENT REGARDING ORAL ARGUMENT ............................................ ii

I.  STATEMENT OF JURISDICTION ..............................................................1

II.  STATEMENT OF ISSUES ON APPEAL ....................................................1

III.  STATEMENT OF THE CASE ......................................................................2

    A.  Procedural History.................................................................................2

    B.  La Grange Employed Garza to Work as a Plant Operator at its King Ranch Gas Plant. ......................................................................3

    C.  La Grange Engaged in the Interactive Process with Garza After He Requested a Disability Accommodation. .......................................4

    D.  Garza Could Not Perform the Essential Functions of His Job and There Were No Other Available Positions for Him. ....................6

    E.  La Grange Terminated Garza's Employment After He Failed to Return to Work. .....................................................................................8

IV.  SUMMARY OF THE ARGUMENT .............................................................9

V.  ARGUMENT.................................................................................................13

    A.  Standard of Review ..............................................................................13

    B.  The District Court Properly Granted Summary Judgment on Garza's Disability Discrimination Claim. ...........................................14

        1.  Garza was not qualified for his position as a Plant Operator because he could not perform the essential functions of the Plant Operator Position. ................................15

            a.  Garza waived any argument regarding what the essential functions of the Plant Operator position were when he was employed. .......................................16

b.    Garza could not perform the essential functions of his job..........................................................................17

c.    There were no reasonable accommodations available which would have enabled Garza to perform the essential functions of his job.....................19

2.    Garza failed to show La Grange terminated his employment because of his disability.......................................25

3.    La Grange terminated Garza's employment for a legitimate, non-discriminatory reason, which was not pretext for unlawful disability discrimination. .........................28

C.    The Record Does Not Support a Claim of "Failure-to-Accommodate" Under the TCHRA. ...................................30

1.    Garza did not plead a cause of action for "failure-to-accommodate."...........................................................31

2.    Even if Garza had properly pled a "failure-to-accommodate" claim, he did not present sufficient evidence to support it. ...............................................33

D.    The District Court Properly Dismissed Appellant's Remaining Claims.............................................................35

1.    Garza Failed to Show that La Grange Retaliated Against Him..................................................................36

2.    Garza Did Not Present Sufficient Evidence on his USERRA Discrimination or Retaliation Claims. ...................40

a.    Garza was not discriminated against on the basis of his membership in the uniformed services. ..................41

b.    Garza has not presented evidence or argument of USERRA-based retaliation...........................................43

iv

3.    Garza Cannot Establish a Triable Issue of Age Discrimination.................................................................44

4.    Garza's Claims of Disability and Age Harassment Also Fail...........................................................................47

        a.    Garza Did Not Properly Plead Claims of Age and Disability Harassment, and even if he did, Garza waived any argument of harassment. ...........................47

        b.    Garza's claim of disability-related harassment fails.................................................................48

        c.    Garza's age-related harassment claim fails. ..................50

E.    The District Court Properly Rendered Garza's Motion for Judgment on the Pleadings and Partial Motion for Summary Judgment Moot....................................................................51

VI.    CONCLUSION...........................................................................53

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Allen v. Rapides Parish School Bd.*,
  204 F.3d 619 (5th Cir.2000) ............................................................................23

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986)........................................................................................14

*Ashcroft v. Iqbal*,
  556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) ...............................48

*Barber v. Nabors Drilling U.S.A., Inc.*,
  130 F.3d 702 (5th Cir.1997) .......................................................................19, 20

*Bauer v. Albemarle Corp.*,
  169 F.3d 962 (5th Cir. 1999) ...........................................................................47

*Bennett v. Dallas Indep. Sch. Dist.*,
  936 F. Supp. 2d 767 (N.D. Tex. 2013) ........................................................42, 44

*Bird v. Nat'l Aeronautics & Space Agency*,
  No. 4:20-CV-275, 2022 WL 447574 (S.D. Tex. Jan. 26, 2022) ......................32

*Bradberry v. Jefferson Cty., Tex.*,
  732 F.3d 540 (5th Cir. 2013) ...........................................................................41

*Britt v. Grocers Supply Co., Inc.*,
  978 F.2d 1441 (5th Cir. 1992) .........................................................................30

*Brown v. San Antonio Food Bank*,
  No. SA21CV507OLGHJB, 2023 WL 4408952 (W.D. Tex. Apr.
  10, 2023) .........................................................................................................32

*Burch v. City of Nacogdoches*,
  174 F.3d 615 (5th Cir. 1999) .................................................................24, 29, 34

*Burns v. Nielsen*,
  456 F. Supp. 3d 807 (W.D. Tex. 2020) ........................................................15, 25

vi

*Campos v. Steves & Sons, Inc.*,
  10 F.4th 515 (5th Cir. 2021) ...............................................................36

*Carmona v. Kilgore Indus.*,
  No. 23-20358, 2024 WL 2151185 (5th Cir. May 14, 2024) ...........................53

*Cutrera v. Bd. of Sup'rs of Louisiana State Univ.*,
  429 F.3d 108 (5th Cir. 2005) ...............................................................31

*Dediol v. Best Chevrolet, Inc.*,
  655 F.3d 435 (5th Cir. 2011) ...........................................................50, 51

*E.E.O.C. v. Agro Distribution, LLC*,
  555 F.3d 462 (5th Cir. 2009) ...............................................................27

*E.E.O.C. v. Chevron Phillips Chem. Co.*,
  570 F.3d 606 (5th Cir. 2009) ...........................................................15, 33

*E.E.O.C. v. LHC Group, Inc.*,
  773 F.3d 688 (5th Cir. 2014) ...................................... 15, 16, 17, 18, 25, 33

*Envtl. Conservation Org. v. City of Dallas*,
  529 F.3d 519 (5th Cir. 2008) ...............................................................52

*Flowers v. S. Reg'l Physician Services Inc.*,
  247 F.3d 229 (5th Cir. 2001) ...............................................................49

*Foreman v. Babcock & Wilcox Co.*,
  117 F.3d 800 (5th Cir.1997) ...............................................................35

*Garcia v. Professional Contract Servs., Inc.*,
  938 F.3d 236 (5th Cir. 2019) ...............................................................37

*Gowesky v. Singing River Hosp. Sys.*,
  321 F.3d 503 (5th Cir. 2003) ...............................................................50

*Greene v. Santander Consumer USA, Inc.*,
  No. 4:18-CV-247-A, 2019 WL 399532 (N.D. Tex. Jan. 30, 2019) .............28, 39

*Hanchey v. Energas Co.*,
  925 F.2d 96 (5th Cir. 1990) ...........................................................13, 14

*Hensley v. Wal-Mart Stores Inc.*,
  290 Fed. Appx. 742 (5th Cir. 2008).............................................16, 48

*McDonnell Douglas Corp. v. Green*,
  411 U.S. 792 (1973)...........................15, 28, 36, 44, 53

*McIncrow v. Harris Cnty.*,
  878 F.2d 835 (5th Cir. 1989) ..............................................52

*McInnis v. Alamo Cmty. Coll. Dist.*,
  207 F.3d 276 (5th Cir. 2000) ..............................................15

*Mzyk v. Ne. Indep. Sch. Dist.*,
  397 Fed. Appx. 13 (5th Cir. 2010)........................................33

*Otero v. New Mexico Corr. Dep't*,
  640 F. Supp. 2d 1346 (D.N.M. 2009) ................................43

*Pineda v. United Parcel Serv., Inc.*,
  360 F.3d 483 (5th Cir. 2004) ..............................................40

*Price v. Fed. Exp. Corp.*,
  283 F.3d 715 (5th Cir. 2002) ..............................................29

*Quick v. Frontier Airlines, Inc.*,
  544 F.Supp.2d 1197 (D. Colo. 2008).................................43

*Reed v. Neopost USA, Inc.*,
  701 F.3d 434 (5th Cir. 2012) .......................................13, 14

*Reed v. Petroleum Helicopters, Inc.*,
  218 F.3d 477 (5th Cir. 2000) ..............................................26

*Reeves v. Sanderson Plumbing Products, Inc.*
  120 S.Ct. 2097 (2000)........................................................45

*Robles v. Eminent Med. Ctr., LLC*,
  619 F. Supp. 3d 609 (N.D. Tex. 2022) ..............................31

*Rogers v. Int'l Marine Terminals, Inc.*,
  87 F.3d 755 (5th Cir. 1996) .....................................20, 21, 26

*Ross v. Judson Indep. Sch. Dist.*,
993 F.3d 315 (5th Cir. 2021) ...............................................................28

*Shackelford v. Deloitte & Touche, LLP,*
190 F.3d 398 (5th Cir. 1999) ...............................................................30

*Sheehan v. Dep't of the Navy*,
240 F.3d 1009 (Fed. Cir. 2001) ......................................................41, 42

*Silva v. City of Hidalgo, Tex.*,
575 Fed. Appx. 419 (5th Cir. 2014)......................................................21

*Tex. Dep't of Transp. v. Lara*,
625 S.W.3d 46 (Tex. 2021) ...................................................................38

*Tex. Tech Univ. Health Scis. Ctr.-El Paso v. Flores*,
612 S.W.3d 299 (Tex. 2020) .................................................................44

*Turco v. Hoechst Celanese Corp.*,
101 F.3d 1090 (5th Cir.1996) (per curiam) .....................................16, 24

*US Airways, Inc. v. Barnett*,
535 U.S. 391 (2002)...............................................................................23

*Wallace v. Methodist Hosp. Sys.*,
271 F.3d 212 (5th Cir. 2001) ................................................................29

*Williams v. Tarrant Cnty. Coll. Dist.*,
717 Fed. Appx. 440 (5th Cir. 2018) (per curiam)................................14

**Statutes**

28 U.S.C. § 1291 ..........................................................................................1

28 U.S.C. § 1331 ..........................................................................................3

28 U.S.C. § 1367(a) ......................................................................................3

28 U.S.C. § 1441 ..........................................................................................3

38 U.S.C. § 4311(b) ..............................................................................43, 44

38 U.S.C.A. § 4311(c) ................................................................................41

38 U.S.C. § 4311(c)(1)................................................................41

42 U.S.C. § 12111(9)(B)............................................................20

42 U.S.C. § 12112(b)(5)(A)........................................................31

Tex. Lab. Code § 21....................................................................1

Tex. Lab. Code § 21.051....................................................2, 12, 32

Tex. Lab. Code § 21.055....................................................2, 12, 39

Tex. Lab. Code § 21.105....................................................2, 12, 31

Tex. Lab. Code § 21.128........................................................12, 32

USERRA ..................................................1, 41, 42, 43, 44

**Other Authorities**

Fᴇᴅ. R. Cɪᴠ. P. 56(c)................................................................13

Fᴇᴅ. R. Cɪᴠ. P.  56 ..................................................................3

# I.    STATEMENT OF JURISDICTION

Plaintiff-Appellant Abel Garza ("Garza") claims that his former employer, Defendant-Appellee La Grange Acquisition, L.P. ("La Grange"), discriminated and retaliated against him based on his disability, his age, and his veteran status under Chapter 21 of the Texas Labor Code (the "TCHRA") and the Uniformed Services Employment and Reemployment Rights Act ("USERRA"). This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291.

The United States District Court for the Northern District of Texas granted Appellees' Motion for Summary Judgment and entered Final Judgment on March 7, 2024. ROA.1948-69, 1970. Garza filed a Notice of Appeal on March 8, 2024. ROA.1971-73.

# II.    STATEMENT OF ISSUES ON APPEAL

1.    Did the District Court properly grant summary judgment on Garza's disability discrimination claim when Garza failed to provide sufficient evidence that he was qualified for his position, that he was terminated on account of his disability, and that the legitimate, non-discriminatory reason for his termination was pretextual?

2.    Did the District Court properly grant summary judgment on Garza's failure-to-accommodate claim, despite Garza's inadequate pleading of the same, given that Garza failed to cite to sufficient evidence that he was qualified for his

position or that there were reasonable accommodations available?

3.      Did the District Court properly grant summary judgment as to Garza's claims of retaliation under the TCHRA, discrimination and retaliation under USERRA, age discrimination under the TCHRA, and age and disability harassment under the TCHRA, when Garza failed not only to provide sufficient evidence to create a genuine issue of material fact as to the elements of these claims, but also to properly brief and cite the Court to sufficient evidence to support the essential elements of these claims?

4.      Did the District Court correctly deny as moot Garza's Motion for Judgment on the Pleadings and Partial Motion for Summary Judgment against Appellees' affirmative defenses when the underlying claims the affirmative defenses applied to were no longer before the Court because they had been dismissed?

## III.   STATEMENT OF THE CASE

### A.   Procedural History

On November 21, 2022, Garza filed his Original Petition in the 95th Judicial District Court, Dallas County, Texas, alleging claims of disability and age discrimination and retaliation under the TCHRA, as well as discrimination and retaliation under USERRA. ROA.33-49. For the claims under the TCHRA, Garza specifically cited to sections 21.051, 21.055, and 21.105 of the Texas Labor Code. ROA.40. Appellees filed their Original Answer on December 30, 2022, and

removed the case to the United States District Court for the Northern District of Texas, Dallas Division, on January 5, 2023, pursuant to the District Court's federal question and supplemental jurisdiction under 28 U.S.C. §§ 1331, 1441, 1367(a). ROA.7-11, 54-61.

Appellees moved for summary judgment under Rule 56 on January 4, 2024. ROA.145-47, 148-496. The District Court granted the motion, entering a Memorandum Opinion and Order on March 7, 2024. ROA.1948-69. Final Judgment was entered the same day. ROA.1970. Garza subsequently filed a Notice of Appeal on March 8, 2024. ROA.1971-73.

## B. La Grange Employed Garza to Work as a Plant Operator at its King Ranch Gas Plant.

La Grange is a subsidiary and employing entity of Energy Transfer, publicly traded limited partnership that, among other things, transports and stores natural gas, natural gas liquids, crude oil, and refined products throughout the country. ROA.396. La Grange hired Plaintiff on or around July 20, 2015, at the King Ranch Gas Plant in Kingsville, Texas. ROA 257, 258-259.[1]  Although originally hired as a Plant

---

[1] The District Court stated in its Memorandum Opinion and Order that "Garza worked for La Grange, a subsidiary of natural gas pipeline company Energy Transfer…" ROA.1949. Garza does not appear to contest this fact as it was not briefed in his Brief to this Court. Rather, Garza simply refers to both Energy Transfer and La Grange as "Appellees." Garza was not employed by Energy Transfer and has failed to identify any evidence that establishes that he was. Therefore, Energy Transfer is not a proper party to this action and Energy Transfer respectfully requests

Operator C, Plaintiff was eventually promoted to Plant Operator A. ROA 258, 261.

As a plant operator, Garza was responsible for the operation of compressors, motors, cooling equipment, pumps, valves, pipelines and other related gas processing equipment. ROA.473-75, 487-89, 262-63. Garza has freely acknowledged that the essential functions of his job required him, among other things, to: (1) respond to alarms and problems within the plant and take corrective measures; (2) work independently and exercise good judgment; (3) work in a 24/7 operational environment, shift rotations, and perform call outs 24/7; (4) react to high stress/emergency situations in a deliberate, thoughtful, and timely manner; and (5) work in confined spaces and around loud machinery. ROA.487-89, 262-67.

## C. La Grange Engaged in the Interactive Process with Garza After He Requested a Disability Accommodation.

Several years after Garza began his employment, on April 1, 2021, Garza notified Clarissa Velasco, Supervisor – Leave Administration that he needed medical accommodations related to PTSD/Anxiety/Depression. ROA.276, 455. Specifically, Garza requested to be moved to another area of the Plant, such as the shipping station, be moved to a safety representative position, or have someone else work with him in case he had problems performing his regular duties. ROA.276-77, 455. Upon receiving this request, the Company followed its normal process for

_____

that this Court dismiss all the claims against it on this basis alone. For simplicity purposes, however, Appellees refer to both entities collectively as "La Grange."

determining Garza's functional limitations and considering whether there were any reasonable accommodations available that would allow Garza to perform the essential functions of his job. ROA.397. Part of this process included gathering additional information from Garza's doctor, Dr. Jeremy Waddell, to assist La Grange in determining Garza's function limitations and whether they could reasonably accommodate them. ROA.397. Several weeks after Garza notified La Grange of his request, on June 25, 2021, La Grange received documentation from Dr. Waddell, who stated that Garza would function best in an open, minimally restrictive environment, with predictable and/or manualized tasks to complete, and that having an environment free from loud and unexpected stimuli would allow Garza to function at a higher level. ROA.290-91, 398-99, 400-01, 456-61. Shortly thereafter, Garza requested to take time away from work and was approved for short-term disability leave ("STD leave"), rendering any other workplace accommodations unnecessary for the duration of his leave. ROA.294-96.

In August of 2021, Dr. Waddell provided Garza with a release to return to work with temporary restrictions, which included (1) movement to less restrictive environment; (2) movement to a less noisy environment; and (3) movement to a more predictable work environment. ROA.300, 462-63. Garza could not perform the essential functions of his plant operator job with these restrictions, since his position required the ability to work in confined spaces and around loud machinery,

respond to alarms and problems within the plant and taking corrective measures, and react to high stress/emergency situations in a deliberate, thoughtful, and timely manner. ROA.487-89, 262-67. Accordingly, La Grange notified Garza on October 22, 2021, that it would not be able to accommodate his doctor's restrictions but encouraged Garza to submit additional information for it to consider in determining other potential accommodations. ROA.464, 404-05.

## D. Garza Could Not Perform the Essential Functions of His Job and There Were No Other Available Positions for Him.

In continuing the interactive process with the goal of identifying a reasonable accommodation for Garza, Velasco spoke with Garza's supervisors about potentially modifying the job duties of a Plant Operator. ROA.450-51. Given the nature of the Plant Operator position, however, La Grange was unable to provide Garza with a less noisy, more open, less restrictive, and more predictable environment because doing so would require eliminating the essential functions of the Plant Operator position. ROA.487-89, 468-69, 404-05. La Grange also considered whether there were any other available positions that Garza could perform with his restrictions. ROA.406.

Garza requested that he be placed in a warehouse position, a shipping station position, or a safety position, but none of these positions were available at the time. ROA.304, 306, 407, 465-66. Specifically, La Grange had made the business decision not to backfill the warehouse position following a retirement, instead

absorbing the duties into other roles.  ROA.330, 442.  The safety position was not available, as another employee at the King Ranch gas plant already held that position.  ROA.438-39, 444.  La Grange also made the business decision not to backfill the former shipping-station-specific position in light of the modernization of the plant and the need for operators to train and be certified in all plant areas.  ROA.345, 403, 409-10, 443.  That is, there was no longer a position dedicated exclusively to the shipping station because operators would instead be rotating to all certified positions as needed.  ROA.345.  But even if these positions had been available, they would not have offered Garza a less restrictive, less noisy, and more predictable environment due to the nature of the work environment throughout the warehouse, which required being around loud machinery in confined spaces.  ROA.267, 468-69.  And while Garza also expressed interest in a recruiting position with Human Resources, Garza did not have the required educational background to fill the position because he did not have a bachelor's degree in a business-related field.[2]  ROA.341, 473-74, 490.  Accordingly, none of the alternative roles Garza identified amounted to reasonable accommodations of Garza's medical limitations

---

[2] Garza's Brief makes the argument that "Appellees much later claimed a college degree was required for the Safety Representative job…" (Doc. No. 25, pgs. 24-25). But Garza's citation to the appellate record for this assertion does not support that argument. The requirement of a college degree was in reference to the recruiting position within Human Resources and is clearly spelled out in the job description. ROA.304.

because they were not available positions.

In October 2021, Garza, along with several other individuals, applied and interviewed for a safety representative position at another plant. ROA.310, 312-13. Michael Johnson, Director of Operations STX, interviewed Garza and five other individuals for the open safety representative position and selected Matthew Thomas, a military veteran, for the role. ROA.313-14, 425-26, 491-94, 318-19, 411. Johnson provided a detailed explanation of the reasoning for the decision, including Thomas's qualifying experience for the role. ROA.492, 494. Once Thomas cleared his background check and drug testing, meaning that Thomas's hiring could proceed, La Grange notified Garza that he did not receive the position. ROA.427, 359. Garza admitted that at no point during the interview or afterwards did Johnson make any negative comment about Garza's disability, his age, or his military service. ROA.316.

## E. La Grange Terminated Garza's Employment After He Failed to Return to Work.

By the very beginning of 2022, Garza was fully aware that La Grange could not accommodate him in his plant operator role, as doing so would require the elimination of one or more essential functions of his job, and that there were no other available positions for which he was qualified. ROA.347. Garza had also been on STD leave since July of 2021. ROA.294-96. But Garza did not apply for any other positions at La Grange or suggest any other possible accommodations, nor could La

8

Grange identify the same. ROA.347, 351, 355. Although La Grange set a deadline of January 6, 2022, for Garza to return to work, La Grange did not terminate Garza's employment since he was applying for, and waiting on, long-term disability benefits. ROA.348-49, 351-52. After the January 6, 2022 date passed, Garza continued to provide updates to La Grange regarding his treatment and pending long-term disability claim, but he did not return to work and instead remained on leave for several more months. ROA.1146, 1172, 470-72. On April 20, 2022, Velasco sent Garza a letter that again detailed the reasons why La Grange could not accommodate Garza and provided him one more opportunity to return to work. ROA.452, 470-72, 358. By this point, Garza had been on leave for nearly nine months and La Grange could not accommodate his remaining on leave indefinitely. ROA.285. Accordingly, when Garza did not return to work on April 25, 2022, La Grange terminated his employment for failure to return to work. ROA.412, 471.

## IV.    SUMMARY OF THE ARGUMENT

This Court should affirm the District Court's grant of summary judgment because Garza failed to establish the *prima facie* elements of each of his claims, failed to demonstrate that La Grange's legitimate, non-discriminatory reason for his termination was pretextual, and failed to properly brief his arguments before the Court.

With respect to Garza's disability discrimination claim, there is no disputed

issue of material fact regarding whether Garza was qualified for his plant operator position. Garza's medical restrictions and limitations prevented him from performing the essential functions of his job, including working independently, responding to alarms and problems within the plant while taking corrective measures, reacting to high stress/emergency situations in a deliberate, thoughtful, and timely manner, and working in confined spaces and around loud machinery. Garza cannot credibly dispute these facts, as he notified La Grange himself that he could not be around loud noises and alarms because it would cause anxiety and flashbacks, admitted that he could not perform the plant operator position alone, and stated that he could not return to a position in the powerhouse, essentially eliminating any ability for him to perform his role as a plant operator. Garza's medical restrictions also precluded him from performing the plant operator job. Although Garza now, on appeal, disputes the specific essential functions of his role, he did not do so in his summary judgment response and therefore waived any such argument. ROA.765-812. La Grange was not able to accommodate Garza's restrictions, as the positions he requested to be moved to either did not exist or were not vacant, and it was not reasonable to force another employee to shadow Garza in the chance Garza had an episode and could not perform his job. Because Garza could not perform the essential functions of the job, and because there were no reasonable accommodations available for him, Garza was not qualified for his position. And since Garza was not

qualified for his position, he cannot recover on a disability discrimination claim under the TCHRA.

Garza's disability discrimination claim also fails because he did not show he was terminated on account of his disability or that La Grange's legitimate, non-discriminatory reason for his termination was pretextual. While Garza was on STD leave, La Grange notified him several times that they were not able to accommodate him given his limitations and the impact those limitations had on the essential functions of his job. Thus, by January of 2022, after La Grange informed Garza that he was not selected for the safety representative position he applied for, Garza was fully aware that none of the position he requested were available. Despite this, Garza continued to remain on leave, did not apply for any other positions, and did not attempt to return to work, even though La Grange warned Garza that it could not accommodate an indefinite leave of absence. After nearly nine months of leave, La Grange provided Garza one final opportunity to return to work, which Garza did not accept, and La Grange terminated his employment as a result. Because Garza's Brief fails to demonstrate an issue of material fact regarding whether his termination was instead a pretext for disability discrimination, Garza cannot succeed on a claim of disability discrimination under the TCHRA.

While Garza purports to bring a "failure-to-accommodate" claim, this claim is not viable because Garza did not properly plead it in his Original Petition, which

specifically cited to three sections of the TCHRA: the general discrimination statute (§21.051); the retaliation statute (§21.055) and the disability discrimination statute (§21.105); but not the "failure-to-accommodate" statute (§21.128). Although Garza references the accommodation process in the fact section of his Original Petition, he does so in reference to the "qualification" element of his disability discrimination claim, not as a separate "failure-to-accommodate" claim. For this reason, Garza failed to state a "failure-to-accommodate" cause of action and this Court should affirm its dismissal accordingly. But even if Garza had properly pled such a claim, it was properly dismissed because Garza failed to show he was qualified for his position as a Plant Operator and could perform the essential functions, with or without reasonable accommodation.

Garza swiftly glosses over his remaining claims and does not show the Court specific pieces of evidence to support each essential element of his retaliation claim, USERRA claims, age discrimination claim, or age and disability harassment claim. Regarding the retaliation claim, Garza's sole argument on appeal – that there was temporal proximity between his charge of discrimination and his termination – is insufficient on its own to create a fact issue of retaliation. Garza attempts to repackage his disability discrimination claim as a USERRA discrimination claim based solely on the argument that his disability stemmed from his time in the armed forces. But Garza does not cite to evidence suggesting that his military service was

a "motivating factor" in his termination. As to his age discrimination claim, Garza fails to show he was qualified for his plant operator position, nor does he present any evidence establishing the other required elements of this claim. Likewise, Garza failed to present sufficient evidence to demonstrate any alleged harassment was sufficiently severe or pervasive as to alter the conditions of his employment and create an abusive working environment. This Court should affirm the District Court's grant of summary judgment on all these claims.

Finally, the District Court did not err in denying Garza's Motion for Judgment on the Pleadings and Motion for Partial Summary Judgment as moot, since the claims impacted by the affirmative defenses asserted by Appellees were no longer viable claims as they had been dismissed. The District Court's ruling should be affirmed in its entirety.

## V.    ARGUMENT

### A.    Standard of Review

This Court reviews the District Court's grant of summary judgment *de novo*. *Reed v. Neopost USA, Inc.*, 701 F.3d 434, 438 (5th Cir. 2012). Summary judgment is proper if there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). Once the movant meets its burden, the non-movant must demonstrate by substantial evidence that there is an "outcome determinative" issue of fact in dispute. *See Hanchey v. Energas Co.,* 925

F.2d 96, 97 (5th Cir. 1990) (citations omitted). Even if an alleged factual dispute is asserted, the dispute will not defeat the motion unless it is both genuine and material. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48 (1986). Legal conclusions and general allegations do not satisfy this burden. *Hanchey*, 925 F.2d at 97 (citing *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1195–96 (5th Cir.1986)). This Court may affirm summary judgment on any ground supported by the record, even one different than that relied on by the district court. *Reed*, 701 F.3d at 438 (citations omitted).

**B.    The District Court Properly Granted Summary Judgment on Garza's Disability Discrimination Claim.**

Garza failed to provide sufficient evidence to establish his claim of disability discrimination under the TCHRA, as he did not show he was qualified for the Plant Operator position or that he was terminated on account of his disability. Summary judgment was also proper because La Grange had a legitimate, nondiscriminatory reason for Garza's termination and Garza failed to present evidence that this reason was a pretext for disability discrimination. ROA.412, 471.

To establish a claim of disability discrimination under the TCHRA,[3] Garza was required to either present direct evidence that he was discriminated against because of his disability or alternatively proceed under the burden-shifting analysis

---

[3] "Because TCHRA "parallels the language of the [ADA]", Texas courts follow ADA law in evaluating TCHRA discrimination claims." *Williams v. Tarrant Cnty. Coll. Dist.*, 717 Fed. Appx. 440, 445-46 (5th Cir. 2018) (per curiam) (quoting *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 285-87 (5th Cir. 2004)).

first articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See E.E.O.C. v. Chevron Phillips Chem. Co.*, 570 F.3d 606, 615 (5th Cir. 2009). This burden-shifting framework required Garza to first present sufficient evidence to establish a *prima facie* case of discrimination by showing that (1) he had a disability; (2) he was qualified for the job; and (3) he was subject to an adverse employment decision on account of his disability, *i.e.*, there was a "causal nexus," *i.e.*, "causal connection," between the adverse employment action and his disability. *Chevron Phillips Chem. Co.*, 570 F.3d at 615; *E.E.O.C. v. LHC Group, Inc.*, 773 F.3d 688, 697 (5th Cir. 2014); *Burns v. Nielsen*, 456 F. Supp. 3d 807, 824 (W.D. Tex. 2020); *McInnis v. Alamo Cmty. Coll. Dist.*, 207 F.3d 276, 279–80 (5th Cir. 2000). Assuming Garza was able to meet this burden (and, as briefed below, he was not), then the burden would shift to La Grange to articulate a legitimate, nondiscriminatory reason for terminating him. *See id*. The burden then shifts back to Garza, who was required to demonstrate that proffered reason for his termination was pretextual in order to avoid summary judgment. *See id*.

1. **Garza was not qualified for his position as a Plant Operator because he could not perform the essential functions of the Plant Operator Position.**

Garza failed to meet his threshold burden, as the undisputed evidence in the Record demonstrates that Garza was not qualified for his plant operator position. To show he was qualified, and to avoid summary judgment, Garza was required to

demonstrate that either (1) he could "perform the essential functions of the job in spite of [his] disability," or, if he could not, (2) that "a reasonable accommodation of [his] disability would have enabled [him] to perform the essential functions of the job." *LHC Group, Inc.*, 773 F.3d at 697 (*quoting Turco v. Hoechst Celanese Corp.*, 101 F.3d 1090, 1093 (5th Cir.1996) (per curiam)). A function is "essential" if it bears "more than a marginal relationship" to the employee's job. *Id.* (quoting *Chandler v. City of Dall.*, 2 F.3d 1385, 1393 (5th Cir.1993), *holding modified on other grounds as discussed in Kapche v. City of San Antonio*, 304 F.3d 493 (5th Cir.2002) (per curiam)). Because the undisputed evidence shows Garza could not perform the essential functions of his job and there were no reasonable accommodations that would have enabled Garza to perform those duties, he was not a qualified individual with a disability.

### a. *Garza waived any argument regarding what the essential functions of the Plant Operator position were when he was employed.*

Garza did not dispute the essential functions of the Plant Operator position in his summary judgment response and has therefore waived those arguments. ROA.786-803, 1956. This Court has consistently held that "arguments not raised in response to a Motion for Summary Judgment are waived and cannot be considered on appeal." *Hensley v. Wal-Mart Stores Inc.*, 290 Fed. Appx. 742, 743–44 (5th Cir. 2008) (citing *Keelan v. Majesco Software, Inc.*, 407 F.3d 332, 339–40 (5th

Cir.2005)). In Garza's Brief to this Court, Garza spent a significant amount of time disputing which of his job functions were essential and whether he could perform the essential functions of the Plant Operator position. (*See* Doc. 25, pgs. 26-35). But as the District Court properly noted, Garza did not raise these arguments in his summary judgment response. ROA.1956. Instead, Garza focused his response on the second qualification element: whether a reasonable accommodation of his disability would have enabled him to perform the essential functions of the job. ROA.786-803. *LHC Group, Inc.*, 773 F.3d at 697. Garza has therefore waived any argument that there is a genuine issue of material fact regarding the essential functions of the Plant Operator position.

### b. *Garza could not perform the essential functions of his job.*

Regardless of whether Garza waived the argument, La Grange has established what the essential functions of the Plant Operator position were, and there is no disputed issue of material fact that Garza could not perform them. The undisputed Record reflects that the essential functions of Garza's job included the ability to work independently, respond to alarms and problems within the plant while taking corrective measures, react to high stress/emergency situations in a deliberate, thoughtful, and timely manner, and work in confined spaces and around loud machinery – each of which Garza freely admitted was a required part of his plant operator position. ROA.263-267, 487-89.

Garza takes issue with La Grange's characterization of his essential functions in an effort to create a fact issue on this critical element of his claims. But the Record reflects no genuine issue of material fact as to Garza's essential duties. The Plant Operator job description itself includes "respond[ing] to alarms," "operat[ing] emergency shutdown systems," and "taking corrective measures" in response to alarms as part of the position's essential functions. ROA.487-488. The required qualifications of the position include the ability to "react to high stress/emergency situations in a deliberate, thoughtful, and timely manner," and "the ability to work independently." *Id*. This Court must give deference to La Grange's job description and its judgment as to what functions of the job are essential. *See LHC Group, Inc.*, 773 F.3d at 697–98 (stating the same and that "if an employer has prepared a written description before advertising or interviewing applicants for the job, this description shall be considered evidence of the essential functions of the job.") (citing 42 U.S.C. § 12111(8)). Indeed, Garza himself admitted that these were essential functions of his Plant Operator job. ROA.263-64. And Garza's arguments that there were other available positions in the plant that were not noisy and did not have alarms are supported only by inadmissible, speculative statements by coworkers lacking in foundation. The competent Record evidence is undisputed and demonstrates that the essential functions of the Plant Operator role included the precise functions Garza was unable to perform.

Knowing these functions were essential, Garza informed La Grange that he could not be around loud noises and alarms because it would cause anxiety and flashbacks, admitted that he could not perform the Plant Operator position alone, and stated that he could not return to a position in the powerhouse. ROA.243, 281, 307, 455. Even the restrictions from Garza's treating physician, which included movement to less restrictive environment, movement to a less noisy environment, and movement to a more predictable work environment, prevented him from performing the essential functions of the job. ROA.300, 463. Thus, by his own admission, as reinforced by his doctor's communications, Garza could not perform the essential functions of his Plant Operator position because the functions he could not perform were precisely those the job required. ROA.487-89. And because the accommodation Garza was requesting was to remove those essential functions from his regular duties, he was not qualified for his Plant Operator position as a matter of law. *See Barber v. Nabors Drilling U.S.A., Inc.*, 130 F.3d 702, 709 (5th Cir.1997). The District Court properly reached such a conclusion in granting La Grange's Motion for Summary Judgment.

> c.    **There were no reasonable accommodations available which would have enabled Garza to perform the essential functions of his job.**

Not only could Garza not perform the essential functions of his Plant Operator position, but there were also no other reasonable accommodations La

Grange could have provided to Garza that would have enabled him to perform those essential functions. "Reasonable accommodations" under the ADA include:

> job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities.

42 U.S.C. § 12111(9)(B). While Garza requested accommodations in the form of movement to less restrictive, less noisy, and more predictable work environment, those accommodations were not reasonable because, as discussed above, working in confined spaces, with loud noises and alarms and emergent situations, were essential functions of the plant operator position. When the requested accommodation is to remove one or more essential functions of the job, it is not reasonable as a matter of law. *See Barber*, 130 F.3d at 709 ("We cannot say that [an employee] can perform the essential functions of the job with reasonable accommodation, if the only successful accommodation is for [the employee] not to perform those essential functions."); *see also Rogers v. Int'l Marine Terminals, Inc.*, 87 F.3d 755, 759 (5th Cir. 1996) (citing *Carr v. Reno*, 23 F.3d 525, 530 (D.C.Cir.1994) (stating that an essential element of any job is the ability to appear for work).

Garza's alternative proposed accommodation of being moved to another position – including a position at shipping station, a warehouse position, a safety

representative position, or a recruiting position – was also not reasonable under the law because the positions he identified either did not exist, were not vacant, or he was not qualified for the role. ROA.407, 455, 465-66, 304, 308, 339. "For the accommodation of a reassignment to be reasonable, it is clear that a position must first exist and be vacant." *Silva v. City of Hidalgo, Tex.*, 575 Fed. Appx. 419, 423 (5th Cir. 2014) (citations omitted). But the record is clear that the positions Garza identifies were not available. For example, La Grange had already planned not to fill the warehouse position Garza identified and informed Garza of the same. ROA.329-30, 442. The shipping station position was being eliminated because the business had decided to instead require operators to rotate to all certified positions. ROA.345, 403. And the safety representative position at the King Ranch Plant was not available because another individual already held the position. ROA.438-39, 444. Even the recruiting position was not a viable option for Garza because he did not meet the qualification of having a bachelor's degree in a business-related field. ROA.341, 490. *See Silva*, 575 Fed. Appx. at 423 (citing *Jenkins v. Cleco Power, LLC*, 487 F.3d 309, 315 (5th Cir.2007)) (stating that a plaintiff bears the burden of proving that an available position existed that he was qualified for and could, with reasonable accommodations, perform). While Garza attempts to rely on declarations from other workers for his argument that there were other warehouse positions available, none of the declarations he proffers are from a manager, business leader,

or any other individual who purports to have knowledge of La Grange's business needs, decisions, or actual hiring practices, and they are not competent summary judgment evidence for this and other reasons. Regardless, nothing about the presentation of these individual employees' perspectives creates a genuine issue of material fact regarding the availability of any position Garza was qualified to perform.

And although Garza applied for another safety representative position at a different plant, the director of that plant made the decision to hire Thomas, whom he deemed more qualified. ROA.491, 318, 411. Garza argues this business decision was a cover for disability discrimination, maintaining that La Grange somehow violated their own policies by hiring an external candidate rather than Garza. (Doc. No. 25, pgs. 39-43). But this argument is nothing more than a red herring, as La Grange's policy does not require that La Grange only hire internal applicants or even articulate a preference for hiring internal candidates, but simply says that it "will attempt to fill job vacancies with internal candidates" and that vacancies in positions "will typically be posted concurrently…" ROA.753. Johnson provided multiple reasons why Thomas was the best selection for the safety representative position, and Garza provides no evidence that La Grange did not consider Garza before other external candidates. ROA.494. Contrary to Garza's arguments, nothing about the Supreme Court's *Barnett* decision requires that employers prioritize disabled

employees seeking a vacant position to the detriment of a more qualified candidate. *US Airways, Inc. v. Barnett*, 535 U.S. 391 (2002); *see also Allen v. Rapides Parish School Bd.*, 204 F.3d 619, 622-23 (5th Cir.2000) ("The ADA does not require an employer to give an employee with a disability his job of choice especially when there are qualified individuals who desire the same position.").  Regardless, Garza was not qualified for the safety position in any event, as the role still would have required Garza to work in a loud environment, which he was unable to do. ROA.457-458, 468-69.

Garza's request for La Grange to assign someone to work alongside him to be able to assist him "if there [were] problems" is likewise unreasonable.  ROA.455. As explained above, an essential function of the Plant Operator position was the ability to work independently and respond promptly to alarms and problems within the plant and take the proper corrective measures. ROA.487-89. Garza testified, however, that when the alarms would sound, his PTSD/anxiety/depression symptoms, including irritability, the inability to focus or concentrate, and difficulty breathing, were sometimes triggered.  ROA.242-43.  Garza also testified that these symptoms and "episodes" varied – sometimes they could happen several times during a week or sometimes only once. ROA.244-45.  Given the nature of his episodic condition, Garza was essentially requesting that La Grange designate another employee to be available at all times, with no notice, to perform Garza's

essential job duties, such as responding to problems in the plant, in case he could not due to an unpredictable episode or issue. ROA.251-52. The law is clear that it is not a reasonable accommodation to reassign other employees to shadow an individual in case he is not able to perform his job duties. *See Burch v. City of Nacogdoches*, 174 F.3d 615, 621 (5th Cir. 1999) ("The ADA does not require an employer to relieve an employee of any essential functions of his or her job, modify those duties, reassign existing employees to perform those jobs, or hire new employees to do so.") (citations omitted).[4] Although employees may be trained in other areas of the plant to assist when needed, Garza did not present any evidence suggesting that it was any other employee's job responsibility to regularly perform Garza's essential functions without prior notice should the need suddenly arise. This proposed accommodation was not reasonable as a matter of law.

Because Garza could not perform the essential functions of his job, with or without reasonable accommodation, Garza was not a "qualified employee" under the TCHRA, and the District Court correctly dismissed Garza's claim. Therefore, Appellees request that this Court affirm the District Court's ruling granting

---

[4] The authority Garza cites to support his argument that training another employee to assist Garza would have been a reasonable accommodation, *Turco v. Hoechst Celanese Corp.*, 101 F.3d 1090 (5th Cir. 1997), does not stand for this proposition at all. Instead, it supports La Grange's position that an employee is not qualified when episodic conditions caused by a disability prevent him from performing his required duties. *Id*. at 1093-1094.

24

Appellees' Motion for Summary Judgment and dismissing Garza's disability discrimination claim in its entirety.

   **2.  Garza failed to show La Grange terminated his employment because of his disability.[5]**

Even if Garza could demonstrate a material issue of fact regarding whether he was qualified for his Plant Operator position, the District Court properly dismissed his disability discrimination claim because he has not demonstrated that La Grange terminated his employment because of his disability. To satisfy this element, Garza was required to present evidence that he was subject to an adverse employment decision on account of his disability. *LHC Group, Inc.*, 773 F.3d at 697; *Burns*, 456 F. Supp. 3d at 824. While Garza may believe that he was terminated because of his disability, the Record evidence shows that Garza was terminated because he was out on an indefinite leave of absence and had not demonstrated any ability to return to work in the foreseeable future. ROA.470-72, 356.

As detailed above, Garza took a leave of absence from his plant operator position because he was unable to perform the role with his medical restrictions.

_____

[5] As discussed in the prior section, Garza has also failed to show he was denied the safety representative position because of his disability. While Garza testified that he believes he was denied the position because of his disability, he admitted that no one told him that was why he was not chosen, and on the contrary, Johnson specifically told him that his disability had nothing to do with his decision. ROA.320-323. The Record demonstrates Johnson selected the individual he felt was most qualified for the position, and Garza has no evidence suggesting otherwise. ROA.494.

ROA.394-96. While on leave, La Grange notified Garza on several occasions that they could not accommodate him given the impact of his limitations on the essential functions of his job and the unavailability of alternative positions. ROA.464, 468-69. But even after La Grange informed Garza that he did not receive the safety representative position he had applied for, and Garza knew that none of the other positions he was interested in were available, Garza continued to remain on leave, did not apply for any other positions, and made no attempt to return to work. ROA.347, 351, 355. Instead, Garza began looking for jobs at other companies while still employed by La Grange. ROA.352. After the passage of several months, La Grange contacted Garza to provide him with one last opportunity to return to work. ROA.470-72. When Garza did not return as requested, La Grange terminated his employment.[6] ROA.470-72, 351-52, 412. Garza was not terminated "on account of" his disability, rather, he was terminated because he failed to return to work, and the only alternative was to place him on an indefinite leave of absence, which La Grange was not required to provide as a matter of law. *See Reed v. Petroleum Helicopters, Inc.*, 218 F.3d 477, 481 (5th Cir. 2000) (citing *Rogers*, 87 F.3d at 759) (holding that an indefinite medical leave is not a reasonable accommodation)).

---

[6] Although more fully addressed in Section V(D)(1) (retaliation) Garza's argument that his termination was actually in January of 2022, rather than May of 2022, directly contradicts his own testimony. ROA.351-52.

Garza's Brief fails to identify evidence demonstrating or even suggesting that Garza was terminated on account of his disability. (*See* Doc. No. 25, pgs. 43-44). Instead, Garza string-cites to evidence in the record largely from the details regarding the hiring of Matthew Thomas,[7] Garza's medical treatment and medical records,[8] and letters to Garza regarding the accommodation process.[9] None of this evidence suggests that La Grange terminated Garza's employment because of his disability. Garza's repeated argument that La Grange made an independent, incorrect determination that it need not accommodate Garza's disabilities because they were temporary or situational is inaccurate and unavailing. The Record clearly reflects that Garza's own medical provider relayed that Garza's conditions were primarily situational and family-related, temporary in nature, and based upon personal desires. ROA.1103. La Grange relayed that information to Garza in explaining that no workplace accommodation could accommodate a condition caused by circumstances outside of work; furthermore, an accommodation requested due to personal preferences is not one that is legally required to be accommodated. ROA.919, 1103. *E.E.O.C. v. Agro Distribution, LLC*, 555 F.3d 462, 471 (5th Cir. 2009) ("ADA provides a right to reasonable accommodation, not to the employee's

---

[7] ROA.886, 908-12, 978-79, 1077-79, 1086-88, 1089-91, 1100, 1075-1076.
[8] ROA.962-963, 1037, 1208-10, 1388-89.
[9] ROA. 1057, 1060, 1058-59, 1062-63, 1067-69, 1073, 1103, 1104, 1107-08, 1213-14

preferred accommodation"). La Grange was not relying on the cause of Garza's disabilities in denying his accommodation request, as Garza suggests. As explained at length, Garza could not be accommodated because he could not perform the essential functions of his job, and nothing about this suggests a discriminatory animus.

Because there is no evidence in the Record that raises a fact issue on the question of whether La Grange terminated Garza's employment because of his disability, the District Court's grant of summary judgment on Garza's disability discrimination claim should be affirmed.

### 3. La Grange terminated Garza's employment for a legitimate, non-discriminatory reason, which was not pretext for unlawful disability discrimination.

The District Court also properly granted summary judgment on Garza's disability discrimination claim because La Grange established a legitimate, nondiscriminatory reason for its actions, and Garza failed to present evidence of pretext. *Ross v. Judson Indep. Sch. Dist.*, 993 F.3d 315, 321 (5th Cir. 2021) (citing *McDonnell Douglas*, 411 U.S. at 802). As explained above, La Grange's reason for Garza's termination was Garza's failure to return to work following an extended leave of absence, which is legitimate and nondiscriminatory as a matter of law. ROA.470-72; *Greene v. Santander Consumer USA, Inc.*, No. 4:18-CV-247-A, 2019 WL 399532, at *4 (N.D. Tex. Jan. 30, 2019) (citing *Owens v. Calhoun Cnty. Sch.*

*Dist.*, 546 F. App'x 445, 448-49 (5th Cir. 2013)) (stating that a failure to return to work is a legitimate and nondiscriminatory reason for terminating a disabled employee). Further, "[w]here an accommodation is not available, Texas law permits an employer to terminate a disabled employee where it appears that, ultimately, due to the nature of the injury, the employee can no longer perform the essential functions of the job." *Burch*, 174 F.3d at 620.

Garza does not dispute the legitimacy of La Grange's stated reason, and he did not provide any evidence to the District Court that La Grange's legitimate, nondiscriminatory reason for terminating his employment was instead a pretext for disability discrimination. In order to survive summary judgment, Garza was required to offer sufficient evidence to create a genuine issue of material fact that discrimination lay at the heart of La Grange's decision, and he must rebut each of the nondiscriminatory reasons La Grange provided. *Price v. Fed. Exp. Corp.*, 283 F.3d 715, 720 (5th Cir. 2002); *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 220 (5th Cir. 2001).

In the letter sent to Garza in April 2022, Velasco explained in detail why Garza could not be accommodated and that he needed to return to work to maintain employment. ROA.470-72. This correspondence came after Garza had previously been advised that La Grange could not accommodate an indefinite leave of absence. ROA.348-49, 467. Despite these communications, Garza did not return. Garza's

only "evidence" that La Grange's stated reason for the termination was pretext is his own belief that La Grange terminated him for unlawful reasons. ROA.257, 315-16, 323-24, 336, 368-69. But speculation and belief are insufficient to create a fact issue as to pretext, as a matter of law. *Britt v. Grocers Supply Co., Inc.*, 978 F.2d 1441, 1451 (5th Cir. 1992) (citing *Little v. Republic Refining Co.*, 924 F.2d 93 (5th Cir.1991) and *Laurence v. Chevron U.S.A., Inc.*, 885 F.2d 280 (5th Cir.1989)); *see also Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 405 (5th Cir. 1999) (citing *Swanson v. Gen. Serv. Admin.*, 110 F.3d 1180, 1186 (5th Cir.1997) ("noting that bare allegations of racial discrimination are too speculative to create a jury question") (citations omitted)).

Because La Grange has provided a legitimate, nondiscriminatory reason for Garza's termination, and Garza did not present, and does not have, any evidence that his disability was in any way a motivating factor in La Grange's decision to terminate his employment, this Court should affirm the District Court's Final Judgment and dismiss Garza's claim of disability discrimination.

## C. The Record Does Not Support a Claim of "Failure-to-Accommodate" Under the TCHRA.

While Garza argues the Record presents a fact issue regarding whether La Grange failed to accommodate his disability, the District Court properly dismissed Garza's claim because he failed to raise any such cause of action. Garza's Petition specifically enumerates sections 21.051 (discrimination), 21.055 (retaliation), and

21.105 (disability discrimination) of the Texas Labor Code, but it makes no reference to section 21.128, the failure-to-accommodate claims provision. But even if Garza had stated such a claim, the District Court properly dismissed it because Garza failed to identify evidence on each element of a failure-to-accommodate claim.

1. **Garza did not plead a cause of action for "failure-to-accommodate."**

Garza specifically pled causes of action for disability discrimination under sections 21.051 and 21.105 and retaliation under 21.055 of the Texas Labor Code without any indication that he also intended to plead a cause of action for failure-to-accommodate under section 21.128. Tex. Lab. Code §§ 21.051, 21.055, 21.105. ROA.33-49. "A claim which is not raised in the complaint but, rather, is raised only in response to a motion for summary judgment is not properly before the court." *Cutrera v. Bd. of Sup'rs of Louisiana State Univ.*, 429 F.3d 108, 113 (5th Cir. 2005) (citation omitted). The District Court's dismissal should be affirmed on this basis alone.

Unlike the ADA, which defines "discriminate" to include "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability," the Texas Labor Code includes no such definition. 42 U.S.C. § 12112(b)(5)(A); *Robles v. Eminent Med. Ctr., LLC*, 619 F. Supp. 3d 609, 635 (N.D. Tex. 2022). Instead, under Texas law, a failure-to-

accommodate claim is an entirely separate and distinct cause of action. *See Brown v. San Antonio Food Bank*, No. SA21CV507OLGHJB, 2023 WL 4408952, at \*4 (W.D. Tex. Apr. 10, 2023), *report and recommendation adopted*, No. SA:21-CV-00507-OLG, 2023 WL 4410516 (W.D. Tex. July 6, 2023), aff'd, No. 23-50564, 2024 WL 1300286 (5th Cir. Mar. 27, 2024) ("Although the parties brief these two claims as one, and although the elements of the two claims overlap to some extent, a failure-to-accommodate claim is distinct from a claim of disability discrimination.") (citing Tex. Lab. Code §21.051 (disability discrimination) and Tex. Lab. Code §21.128 (failure to accommodate)); *see also Bird v. Nat'l Aeronautics & Space Agency*, No. 4:20-CV-275, 2022 WL 447574, at \*8 (S.D. Tex. Jan. 26, 2022), *report and recommendation adopted*, No. 4:20-CV-00275, 2022 WL 444475 (S.D. Tex. Feb. 14, 2022) (noting that although the claims overlap to some extent under the Texas Labor Code, a failure-to-accommodate claim is distinct from a claim of disability discrimination). Garza did not plead a failure-to-accommodate claim, and therefore, there is none at issue in this dispute.[10]

Garza's Original Petition makes several assertions that his claims are based on disability discrimination without mentioning that he also intended to bring a failure-to-accommodate claim. ROA.40. And while Garza's Petition includes

---

[10] For this reason, the entire Amicus Brief of Disability Rights Texas should not be considered, as it is entirely premised upon a failure-to-accommodate cause of action.

factual allegations regarding La Grange's denial of his requested accommodations, the argument that he could have been reasonably accommodated is an element of his disability discrimination claim and is pleaded in that manner. *Chevron Phillips Chem. Co.,* 570 F.3d at 615; *LHC Group, Inc.*, 773 F.3d at 697. Because Garza failed to properly plead a claim of failure-to-accommodate, this Court should affirm the District Court's dismissal of this claim.

### 2. Even if Garza had properly pled a "failure-to-accommodate" claim, he did not present sufficient evidence to support it.

Garza's failure-to-accommodate claim, even if viable, fails for reasons similar to his disability discrimination claim. To recover on a failure-to-accommodate claim, Garza would have had to show that (1) the employer is covered by the statute, (2) he was an individual with a disability, (3) he could perform the essential functions of his job with or without reasonable accommodation, and (4) La Grange had notice of the disability and failed to provide that accommodation. *Mzyk v. Ne. Indep. Sch. Dist.*, 397 Fed. Appx. 13, 15 n.3 (5th Cir. 2010). As detailed above, *see supra* section B(1)(c), despite La Grange's extensive efforts, Garza could not perform the essential functions of his job with or without reasonable accommodation. This included the ability to work independently, respond promptly to alarms and problems within the plant, react to high stress/emergency situations, and work in confined spaces. ROA.487-89, 263-67. Knowing these were his essential job functions, Garza expressly told La Grange that he could not be around loud noises and alarms because

it would cause anxiety and flashbacks, admitted that he could not perform the plant operator position alone, and stated that he could not return to a position in the powerhouse. ROA.243, 276, 281, 307, 455. The undisputed Record evidence reflects that La Grange informed Garza on numerous occasions that they could not accommodate those particular restrictions because they would remove essential functions of his job, and Garza never asserted otherwise. ROA.464, 467-72.

The undisputed evidence also reflects La Grange's extensive efforts to identify and provide an alternative reasonable accommodation for Garza's condition. But neither Garza nor La Grange could identify any other accommodation, including another available position he was qualified for. ROA.407. While Garza claims that his initial accommodation request was only that another employee be trained to cover for him in the Powerhouse as needed, his request specifically proposed "having someone else working [t]here at Powerhouse with [him] . . . and making sure someone [was] there to help [him] if there [were] problems." ROA.455. The suggestion that La Grange provide another employee for this type of role was not a reasonable accommodation as a matter of law because employers are not required to relieve an employee of any essential functions of his or her job, modify those duties, reassign existing employees to perform those jobs, or hire new employees to do so in order to accommodate a disability. *Burch*, 174 F.3d at 621. Moreover, because the ability to work independently was an essential function of the plant operator

position, as Garza admitted, it was not a reasonable accommodation to require other plant employees to fill Garza's duties in the event of an emergency triggering a medical episode. ROA.245-247. Given that Garza's requests would have eliminated essential functions of his position or required La Grange to create a new position, there was no obligation for La Grange to accommodate Garza in this manner. "Under the [disability discrimination statutes], an employer is not required to give what it does not have." *Foreman v. Babcock & Wilcox Co.*, 117 F.3d 800, 810 (5th Cir.1997).

Without a showing that there was a reasonable accommodation that could have enabled him to perform these essential functions, Garza cannot establish that La Grange failed to accommodate his disability. The District Court properly noted that Garza failed to produce sufficient evidence to establish the essential elements of his alleged failure-to-accommodate claim, and Appellees respectfully request the Court affirm the District Court's ruling and dismiss Garza's claim in its entirety.

## D. The District Court Properly Dismissed Appellant's Remaining Claims.

Garza's remaining claims of retaliation under the TCHRA, discrimination and retaliation under USERRA, age discrimination under the TCHRA, and age and disability harassment were likewise properly dismissed as Garza did not provide sufficient evidence to support any of these claims.

1.    **Garza Failed to Show that La Grange Retaliated Against Him.**

For Garza to recover on a retaliation claim under the TCHRA, he was required to prove (1) that he engaged in a protected activity; (2) that an adverse employment action occurred; and (3) that a causal link existed between the protected activity and the adverse action. *Campos v. Steves & Sons, Inc.*, 10 F.4th 515, 525 (5th Cir. 2021) (citations omitted). The *McDonnell Douglas* burden-shifting framework applies to retaliation claims. *Id*. The District Court properly granted summary judgment on Garza's retaliation claim because he failed to show a causal link between any protected activity and his termination and because La Grange had a legitimate, nondiscriminatory reason for Garza's termination that Garza failed to rebut with credible evidence.

For purposes of this appeal, La Grange does not dispute that Garza's filing a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) in early January 2022 constituted protected activity under applicable law, but Garza has mischaracterized the undisputed evidence in an attempt to manufacture an issue of material fact as to the timing of his termination. ROA.35. Garza's sole argument on appeal is that his termination allegedly occurred "just two days after filing [the] EEOC charge." (*See* Doc. No. 25, pgs. 45-46). But the undisputed Record evidence is that Garza's termination occurred on May 4, 2022, not January 2022. ROA.351-52, 412. Garza admitted he never received any notice

of his termination in January 2022 and that, instead, he learned of his termination by a letter he received in late April 2022 notifying him that his employment would end if he did not make arrangements to return to work. ROA.351-52, 470-72. This corroborates Ms. Velasco's testimony on the subject and is consistent with the letter itself. ROA.412, 470-72. Further, Garza's own conduct reinforces his understanding that his termination occurred later in 2022. ROA.1146, 1172. Specifically, Garza provided updates to La Grange regarding the status of his claim with his long-term disability insurer at the end of January of 2022, and then he followed up with La Grange on March 18, 2022 regarding his accommodation request. ROA.352, 1146, 1172. Given both his behavior at the time and his admissions in litigation, Garza cannot now manufacture an issue of fact regarding the date of his termination.

Considering the correct termination date, Garza's only protected activity at the beginning of January of 2022 occurred nearly four months before his termination. ROA.35, 412. And his termination occurred after La Grange repeatedly told Garza they could not accommodate him and that his requested alternative positions were not available. ROA.464, 468-72, 356. Though close temporal proximity can be evidence of retaliation in some circumstances, the Fifth Circuit has noted that a three-month duration is insufficient for such a showing. *See, e.g.*, *Garcia v. Professional Contract Servs., Inc.*, 938 F.3d 236, 243 (5th Cir. 2019)

(citing *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273–74 (2001)). Accordingly, without more, Garza cannot show a causal connection between his EEOC charge and his termination.

But even if there were temporal proximity between the filing of Garza's charge and his termination or a fact issue regarding the same, it is not a material dispute in any event because even Garza does not truly believe that his termination was due to his filing of a charge of discrimination. ROA.369. Rather, Garza believes that La Grange retaliated against because he asked for an accommodation and La Grange did not want him employed anymore. ROA.369. But unlike the ADA, a disability accommodation request does not amount to protected activity under the TCHRA unless the request "at a minimum, alert[s] the employer to the employee's reasonable belief that unlawful discrimination is at issue." *Tex. Dep't of Transp. v. Lara*, 625 S.W.3d 46, 58-59 (Tex. 2021) (discussing similarities and differences between the ADA and the TCHRA and noting that to invoke the anti-retaliation protections of the TCHRA, the employee's request must have raised the possibility of discrimination in his communications).[11] Simply requesting an accommodation, without anything more, is not opposing "a discriminatory practice" under the

---

[11] Protected activity under the TCHRA is when an employee: (1) opposes a discriminatory practice; (2) makes or files a charge; (3) files a complaint; or (4) testifies, assists, or participates in any manner in an investigation, proceeding, or hearing. Tex. Lab. Code § 21.055.

TCHRA. *Id*. at 60-61. Nothing in the Record suggests that Garza made any allegation to La Grange that they were engaging in discrimination or other unlawful conduct by denying his accommodation. And in any event, as the District Court properly noted, Garza has not pointed to any other evidence in the Record to suggest that La Grange retaliated against him for requesting an accommodation or for any other alleged protected activity, and Garza's claim was therefore properly dismissed.

Even if Garza could show a causal connection, summary judgment was still proper because La Grange had a legitimate, nonretaliatory reason for Garza's termination,[12] and there is no evidence of pretext. Following nine months of leave, which included four months of leave after his STD expired, La Grange requested that Garza return to work because it could not continue to accommodate an indefinite leave. ROA.470-72. Garza did not return to work, and La Grange terminated his employment for that reason. ROA. 412, 470-72. La Grange's reasoning for Garza's termination had nothing to do with Garza's filing with the EEOC or any request for accommodation but was focused instead on Garza's failure to return to work – a legitimate, nonretaliatory reason under applicable law. *Greene*, 2019 WL 399532, at *4 (citing *Owens*, 546 F. App'x at 448-49) (failure to return to work is a legitimate

---

[12] As discussed above, La Grange also had legitimate, nondiscriminatory reasons for not selecting Garza for the safety representative position, and Garza has no evidence that decision was motivated by pretext. *See supra* Section B(1)(c).

and nondiscriminatory reason for terminating a disabled employee).

Because La Grange has provided a legitimate, nonretaliatory reason for Garza's termination, Garza is required to show that "but for" his protected activity, he would not have been terminated. *Pineda v. United Parcel Serv., Inc.*, 360 F.3d 483, 487 (5th Cir. 2004) (citing *Medina v. Ramsey Steel Co., Inc.*, 238 F.3d 674, 685 (5th Cir. 2001) and *Long v. Eastfield College*, 88 F.3d 300, 305 n.4 (5th Cir. 1996) ("[E]ven if a plaintiff's protected conduct is a substantial element in a defendant's decision to terminate an employee, no liability for unlawful retaliation arises if the employee would have been terminated even in the absence of the protected conduct.")). Regardless of whether Garza filed a charge of discrimination, the undisputed Record evidence shows La Grange would have still terminated Garza's employment given the fact that Garza remained out of work for nine months with no intention of returning. ROA.183. Garza has not pointed this Court to sufficient evidence that La Grange's rationale was pretextual or otherwise motivated by an intent to retaliate against him. For these reasons, this Court should affirm the District Court's grant of summary judgment.

**2.** **Garza Did Not Present Sufficient Evidence on his USERRA Discrimination or Retaliation Claims.**

Garza's claims that La Grange refused to accommodate him and terminated his employment because he was a military veteran and/or because he exercised his rights under USERRA fail because he did not meet his burden of proof to create a

genuine issue of material fact as to either claim. For the reasons explained below, this Court should affirm summary judgment in La Grange's favor.

### a. *Garza was not discriminated against on the basis of his membership in the uniformed services.*

There is a two-step process allocating the burden of proof between the employee and the employer in a discrimination case under § 4311(c). 38 U.S.C.A. § 4311(c) (USERRA). Garza has the initial burden to show, by a preponderance of the evidence, that the employee's military service was a substantial or motivating factor in the materially adverse employment decision. *See* 38 U.S.C. § 4311(c)(1); *Sheehan v. Dep't of the Navy*, 240 F.3d 1009, 1013 (Fed. Cir. 2001); *Bradberry v. Jefferson Cty., Tex.*, 732 F.3d 540, 545 (5th Cir. 2013); "If this requirement is met, the employer then has the opportunity to come forward with evidence to show, by a preponderance of the evidence, that the employer would have taken the adverse action anyway, for a valid reason." *Sheehan*, 240 F.3d at 1013. Garza must make an initial showing that military service was a substantial or motivating factor in a materially adverse employment decision. *Id*.

Garza pointed to no evidence whatsoever in his summary judgment response to support his claim of discrimination under USERRA. ROA.809-11. Even in Garza's Brief to this Court, his only argument is that his disability is so necessarily intertwined with his prior military service that the discrimination he allegedly faced must have been based on both factors. (*See* Doc. No. 25, pgs. 46-47). But without

41

evidence at least suggesting that Garza's military service was itself a motivating factor in La Grange's accommodation process or the decision to terminate his employment, Garza's argument is not sufficient to support a claim of discrimination under USERRA. *See*, *e.g.*, *Bennett v. Dallas Indep. Sch. Dist.*, 936 F. Supp. 2d 767, 788 (N.D. Tex. 2013) (stating that the plaintiff had not pointed to any evidence that the employer's decisions regarding plaintiff's employment related to his protected status as a member of the military and noting that Plaintiff asserted the same arguments for his ADA and USERRA claim); *see also Sheehan*, 240 F.3d at 1014 (holding that "in USERRA [discrimination] actions there must be an initial showing by the employee that *military status* was at least a motivating or substantial factor") (emphasis added)).

Garza cannot present such evidence because there is none. Garza admitted that no one at La Grange made any negative comments about his military service. ROA.369. And even Garza's own speculation on why he was terminated is not related to his military service, but rather his request for a disability accommodation. ROA.368. As explained at length above, La Grange terminated Garza's employment due to his failure to return to work, not because he was a member of the armed services. ROA.470-72. Garza has failed to meet his burden to show a genuine issue of material fact that his military status was a motivating factor in his termination and therefore, the District Court's grant of summary judgment should be affirmed.

### b. *Garza has not presented evidence or argument of USERRA-based retaliation.*

Garza has likewise failed to point to any evidence to support his claim of retaliation under USERRA.[13] Neither Garza's summary judgment response nor his Brief to this Court provide clarity as to what evidence he has to demonstrate La Grange retaliated against him for taking actions to enforce his rights under USERRA. ROA.809-11. In his summary judgment response, Garza merely stated that he has "shown that his disability was service related and that, as a result, the failure to accommodate was a de facto service-related discrimination," but cited the District Court to no pieces of evidence or authority for this assertion. ROA.810. Garza makes this same argument to this Court but argues that his disability was "completely intertwined and inseparable" from his military service that the alleged disability-based discrimination he experienced was also motivated by "military-based discriminatory animus." (Doc. No. 25, pg. 47). At no point does Garza make

---

[13] Although the term "retaliation" is not used in the statute, USERRA also provides that employers are prohibited from discriminating in employment against and may not take adverse employment actions against the following qualified individuals: "(1) those who have taken action to enforce protections offered by USERRA, (2) those who have testified in a USERRA proceeding, (3) those who have participated in a USERRA investigation, and (4) those who have exercised a right provided for by USERRA." *See* 38 U.S.C. § 4311(b); *Otero v. New Mexico Corr. Dep't*, 640 F. Supp. 2d 1346, 1353 (D.N.M. 2009). While it "does not use the term 'retaliation,' the gravamen of [§ 4311(b)] is to prohibit adverse action taken in retaliation for involvement in the assertion of substantive rights established by USERRA." *Quick v. Frontier Airlines, Inc.,* 544 F.Supp.2d 1197, 1208 (D. Colo. 2008).

argument or cite to evidence suggesting that La Grange retaliated against him for enforcing protections offered by USERRA, testifying in a USERRA proceeding, participating in a USERRA investigation, or exercising a right provided for by USERRA. *See* 38 U.S.C. § 4311(b); *Frontier Airlines, Inc.,* 544 F. Supp.2d at 1208; *see also See Bennett,* 936 F. Supp. 2d at 788-89 ("[Plaintiff] fails to point to any evidence of a connection between his USERRA-protected actions and [the employer's] decisionmaking"). Without such a showing, Garza's claim fails.

### 3. Garza Cannot Establish a Triable Issue of Age Discrimination.

As with his other claims, Garza has failed to present sufficient evidence that he was discriminated against because of his age. In particular, Garza cannot show he was qualified for his position, and there is no evidence that his age motivated his termination or any other employment decision.

Age discrimination claims follow the same *McDonnell-Douglas* burden-shifting framework as other discrimination claims. *Tex. Tech Univ. Health Scis. Ctr.-El Paso v. Flores*, 612 S.W.3d 299, 305 (Tex. 2020) (citations omitted). Therefore, Garza must first create a presumption of illegal discrimination by establishing a *prima facie* case of age discrimination under the TCHRA. *Id.* Specifically, Garza must show that he (1) was a member of the protected class (that is, 40 years of age or older), (2) was qualified for the position at issue, (3) suffered a final, adverse employment action, and (4) was either (a) replaced by someone

significantly younger or (b) otherwise treated less favorably than others who were similarly situated but outside the protected class. *Id*. (citations omitted). Further, Garza must demonstrate that his age "actually played a role in the [employer's decision making] process and had a determinative influence on the outcome." *Reeves v. Sanderson Plumbing Products, Inc.* 120 S.Ct. 2097, 2105 (2000) (quoting *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610 (1993)).

Other than a speculative assertion that other younger operators were hired while Garza was on leave,[14] Garza does not cite to any evidence that could indicate La Grange discriminated against him because of his age. (*See* Doc. No. 25, pgs. 47-48). Rather, Garza ends his one paragraph of argument with a statement that he believes there is evidence of disability discrimination, not age discrimination. (*See* Doc. No. 25, pgs. 48). Without even an argument that age motivated La Grange's decision, Garza's age discrimination claim fails.

In any event, as discussed at length above, *see supra*, Garza's would-be age discrimination claim fails because he was not qualified for his position, as he could

---

[14] Appellees moved to strike several of Garza's declarations used in support of his response to the Motion for Summary Judgment. ROA.1910-22. Although the District Court denied Appellees' Motion to Strike, the District Court also stated that it was not relying on these declarations in granting summary judgment. ROA.1952 (fn. 3). This Court should also not rely on these declarations as they are highly objectionable. The declarations lack foundation, are not based on personal knowledge, are conclusory, and contain several irrelevant statements, and they were properly not considered for these reasons.

not perform the essential functions of his job. Additionally, Garza has not provided any evidence to this Court that his age actually played a role in La Grange's decision to terminate his employment. Indeed, when asked about how La Grange discriminated against him based on his age, Garza's only purported evidence was a conversation in a parking lot that occurred three years before his termination in which two employees commented that they were unaware of Garza's age. ROA.337, 367. Garza's speculation on the merits of his age discrimination claim continued when he admitted that no one has made any negative comments about his age, and he has no idea how younger employees are treated at the plant. ROA.368. Garza also admitted that he was unsure why he was not selected for the safety representative role that he interviewed for, declining to even speculate that it was because of his age. ROA.323-24. While Garza relies upon the declaration of a fellow operator that La Grange hired younger workers while Garza was on leave, there is no indication the declarant was in a position to know the circumstances of any new hires, whether the individuals he identifies were actually new hires, or the documented ages of those individuals. ROA.819-820. Without even a scintilla of credible evidence that age motivated La Grange's employment decisions regarding Garza, his claim fails.

But even assuming Garza could prove a *prima facie* case of age discrimination, La Grange had a legitimate, nondiscriminatory reason for Garza's

termination that was not pretextual – his failure to return to work. ROA.467-72. Indeed, Garza's argument that La Grange discriminated against him because of his age, or that La Grange's reasoning is pretextual, does not even make logical sense given that La Grange invited Garza to return to work. ROA.464, 467-72. In any event, Garza has absolutely no evidence suggesting La Grange's reasons were a pretext for age discrimination, other than his subjective belief, which is insufficient to defeat summary judgment as a matter of law. *See Bauer v. Albemarle Corp*., 169 F.3d 962, 967 (5th Cir. 1999) ("This court has consistently held that an employee's 'subjective belief of discrimination' alone is not sufficient to warrant judicial relief."). For these reasons, La Grange requests the Court affirm the District Court's holding and dismiss Garza's age discrimination claims in their entirety.

4. **Garza's Claims of Disability and Age Harassment Also Fail.**

 a. *Garza Did Not Properly Plead Claims of Age and Disability Harassment, and even if he did, Garza waived any argument of harassment.*

The District Court's dismissal of Garza's age and disability harassment claims should be affirmed because Garza did not properly plead them. Garza's Original Petition mentions the word "harassment" only a handful of times and at no point provides any explanation of how Garza believes La Grange "harassed" him due to his age and disability. ROA.33-49. The federal pleading standard requires Garza to plead more than "unadorned, the-defendant-unlawfully-harmed-me accusation."

*Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (internal citations omitted)). Garza simply adding "harassment" to the headers of his discrimination claim is likewise improper. *See Iqbal*, 556 U.S., at 678 (stating that a "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do'") (citing *Twombly*, 550 U.S., at 555). Garza failed to properly plead any claims of harassment under the TCHRA.

And regardless of whether Garza properly plead claims of age or disability-related harassment, Garza has waived any arguments related to these claims because he failed to raise them in response to La Grange's Motion for Summary Judgment. ROA.765-812. "Arguments not raised in response to a motion for summary judgment are waived and cannot be considered on appeal." *Hensley*, 290 Fed. Appx. at 743–44 (citing *Keelan*, 407 F.3d at 339–40). Because Garza's harassment claims were not properly pled or argued, the Court should affirm their dismissal.

### b. *Garza's claim of disability-related harassment fails.*

Regardless of whether this Court agrees Garza does not properly have the claim before this Court, Garza has not pointed the Court to any evidence to support a claim that he was harassed due to his disability. To establish such a claim, Garza is required to show (1) that he belongs to a protected group; (2) that he was subjected to unwelcome harassment; (3) that the harassment complained of was based on his

disability or disabilities; (4) that the harassment complained of affected a term, condition, or privilege of employment; and (5) that the employer knew or should have known of the harassment and failed to take prompt, remedial action. *Flowers v. S. Reg'l Physician Services Inc.*, 247 F.3d 229, 235–36 (5th Cir. 2001) (citations omitted). Importantly, for his claim to succeed, Garza must show that the disability-based harassment was "sufficiently pervasive or severe to alter the conditions of employment and create an abusive working environment." *Id.* at 236 (quoting *McConathy v. Dr. Pepper/Seven Up Corp.*, 131 F.3d 558, 563 (5th Cir.1998) (per curiam)).

In an attempt to support his claim, Garza argues that there was an alleged delay in responding to his accommodation request, his accommodation request was denied, there was a lack of communication about the other Safety Representative position, and that La Grange refused to consider him for transfers.[15] (Doc. No. 25, pg. 48). None of this evidence is sufficient to show that Garza was subjected to conduct based on his disability that was "sufficiently pervasive or severe to alter the conditions of employment and create an abusive working environment." *Flowers*, 247 F.3d at 236. As the District Court correctly noted, "cold shouldering" or "insensitivity toward" a plaintiff's needs in connection with his disability does not

---

[15] By "transfers," as explained elsewhere, Garza is referring to transfers to other positions that either did not exist or were not available. ROA.407.

constitute "sufficiently pervasive disability-based harassment." *Gowesky v. Singing River Hosp. Sys.*, 321 F.3d 503, 509 (5th Cir. 2003) (citing *McConathy*, 131 F.3d at 563-64). Garza's failure to produce sufficient evidence to show disability-based harassment requires this Court to affirm the District Court's Final Judgment and dismiss Garza's claims in their entirety.

### c.    *Garza's age-related harassment claim fails.*

In the same few sentences offered to support Garza's age discrimination claim and disability-based harassment claim, Garza also asserts he was harassed due to his age. But Garza fails to cite any evidence to support a claim of age-based harassment under the TCHRA.

For Garza to establish a claim of age-based harassment, Garza must show that (1) he was over the age of 40; (2) he was subjected to harassment, either through words or actions, based on age; (3) the nature of the harassment was such that it created an objectively intimidating, hostile, or offensive work environment; and (4) there exists some basis for liability on the part of the employer. *Dediol v. Best Chevrolet, Inc.*, 655 F.3d 435, 441 (5th Cir. 2011). A workplace environment is hostile when it is "permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently pervasive to alter the conditions of the victim's employment." *Id.* (quoting *Alaniz v. Zamora–Quezada*, 591 F.3d 761, 771 (5th Cir. 2009)). Under this standard, the conduct Garza complains of must be both objectively and subjectively

offensive. *Id.* (citing *EEOC v. WC&M Enters.*, 496 F.3d 393, 399 (5th Cir.2007)). This means that not only must Garza perceive the environment to be hostile, but it must also appear hostile or abusive to a reasonable person. *Id.* Courts consider several factors to determine whether the conduct is objectively offensive, including "(1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating, or merely an offensive utterance; and (4) whether it interferes with an employee's work performance." *Id.* (quoting *WC&M Enters.*, 496 F.3d at 399).

Garza falls far short of meeting this burden. Not only has Garza failed to provide any evidence to show he was subjected to harassment based on his age, but he has also not shown that La Grange's work environment was "permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently pervasive to alter the conditions of [Garza's] employment." *Dediol*, 655 F.3d at 441 (citations omitted). Given the absence of such evidence, this Court should affirm the District Court's Final Judgment and dismiss Garza's claims in their entirety.

**E.    The District Court Properly Rendered Garza's Motion for Judgment on the Pleadings and Partial Motion for Summary Judgment Moot.**

Because the District Court dismissed all of Garza's claims, providing detailed reasoning for its decision, the District Court properly denied Garza's Motion for Judgement on the Pleadings and Partial Motion for Summary Judgment as moot.

Garza filed a Motion for Judgment on the Pleadings and Partial Motion for

Summary Judgment on Appellees' affirmative defenses of statute of limitations, failure to exhaust administrative remedies, after-acquired evidence doctrine, mixed-motive defense, and failure to mitigate damages defense. ROA.497-528. Appellees' Motion for Summary Judgment on Garza's claims, however, did not seek to recover on these affirmative defenses and instead, focused on Garza's inability to establish the required elements of his claims. ROA.145-186. The District Court's Memorandum Opinion and Order detailed its reasoning for granting the motion and dismissing all of Garza's affirmative claims. ROA.1948-1969. And because the affirmative claims to which the affirmative defenses would be applied to no longer existed, Garza's Motion for Judgment on the Pleadings and Partial Motion for Summary Judgment became moot. *See Envtl. Conservation Org. v. City of Dallas*, 529 F.3d 519, 527 (5th Cir. 2008) (quoting *Ctr. for Individual Freedom v. Carmouche*, 449 F.3d 655, 661 (5th Cir. 2006)) ("any set of circumstances that eliminates actual controversy after the commencement of a lawsuit renders that action moot.").

The reasoning for the District Court's ruling denying Garza's Motion was not "vague or simply left unsaid," as Garza alleges. *McIncrow v. Harris Cnty.*, 878 F.2d 835, 836 (5th Cir. 1989). Rather, the District Court articulated that because there were no longer any claims against Appellees, there was no need to decide whether Appellees could prevail on their affirmative defenses. ROA.1969. This was not a

circumstance in which the district court simply failed to provide an analysis of the *McDonnell Douglas* framework, leaving the Court of Appeals the inability to determine "at which stage of the analysis the district court thought [Plaintiff's] claim failed." *Carmona v. Kilgore Indus.*, No. 23-20358, 2024 WL 2151185, at *3 (5th Cir. May 14, 2024). The District Court correctly determined that because Appellee's Motion for Summary Judgment was meritorious, it need not consider Garza's motions. Appellees respectfully ask the Court of Appeals to affirm the District Court's ruling.

## VI.   CONCLUSION

For the reasons stated herein, Appellees respectfully ask the Court of Appeals to affirm the District Court's ruling as to Garza's claim of disability discrimination, as he cannot show the required elements to recover on such a claim. As to the alleged claim of "failure-to-accommodate," Appellees respectfully ask the Court to rule that Garza did not properly plead this claim, or in the alternative, to affirm the District Court's ruling that Garza failed to create a genuine issue of material facts as to essential elements of this claim. Appellees also respectfully request that the Court affirm the District Court's dismissal of Garza's claims of retaliation, age discrimination, discrimination and retaliation under USERRA, and age and disability-related harassment, as Garza failed to provide sufficient evidence to support these claims. Finally, given that all of Garza's claims are dismissed with

prejudice, Appellees respectfully request that the Court affirm the District Court's ruling denying Garza's Motion for Judgment on the Pleadings and/or Partial Summary Judgment as moot.

Dated:    August 9, 2024              Respectfully submitted,

*/s/ Kelley Edwards*
Kelley Edwards (Attorney-in-Charge)
kedwards@littler.com

LITTLER MENDELSON, P.C.
1301 McKinney Street
Suite 1900
Houston, TX  77010
Telephone:    713.951.9400
Facsimile:    713.951.9212

Matthew Swanger
mswanger@littler.com

LITTLER MENDELSON, P.C.
2001 Ross Avenue
Suite 1500
Dallas, TX  75201
Telephone:    214.880.8100
Facsimile:    214.880.0181

**ATTORNEYS FOR DEFENDANTS-APPELLEES**

## CERTIFICATE OF SERVICE

I hereby certify that on August 9, 2024, I served the counsel listed below via the Court's electronic filing system and addressed as follows:

Charles H. Peckham
Mary Abbott Martin
Peckham Martin, PLLC
800 Bering Drive, Suite 220
Houston, TX 77057


*/s/ Kelley Edwards*
Kelley Edwards

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS

1.     This document complies with the type-volume limit of FED. R. APP. P. 32(a)(7) because, excluding the parts of the document exempted by FED. R. APP. P. 32(f), this document contains 12,936 words.

2.     This document complies with the typeface requirements of FED. R. APP. P. 32(a)(5) and the type-style requirements of FED. R. APP. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in 14-pt Times New Roman.

*/s/ Kelley Edwards*
Kelley Edwards